IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:15-cv-00790-RBD-DAB

NUTRIMATIX INC. n/k/a
STYR LABS, INC.,
a Nevada corporation,

    Plaintiff,

vs.

XYMOGEN, INC.,
an Illinois corporation,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES, AND INCORPORATED STATEMENT OF MATERIAL FACTS AND MEMORANDUM OF LAW**

Plaintiff Nutrimatix Inc. n/k/a Styr Labs, Inc. ("Nutrimatix"), pursuant to Federal Rule of Civil Procedure 56, hereby moves this Court for summary judgment on certain Affirmative Defenses ("Aff. Def.") (Doc. No. 8) filed by Defendant Xymogen, Inc. ("Xymogen") to Nutrimatix's Complaint (Doc. No. 1).

## INTRODUCTION

This case arises out of Xymogen's untimely delivery of defective nutritional supplement powder packs, or "stick packs." Nutrimatix first contacted Xymogen about manufacturing the stick packs in April 2014, and stated on numerous occasions that it needed the stick packs for launching during the fall 2014 marathon racing season. However, most of the Nutrimatix order was not completed until 2015, and Nutrimatix

subsequently discovered that the stick packs were defective in taste and nutrient content. Nutrimatix's Complaint asserts claims for breach of contract and breach of warranty against Xymogen.

Xymogen asserted various affirmative defenses to the Complaint. In particular, Xymogen alleged that any changes in the taste of the stick packs "resulted from either the handling processes or the storage of such goods once out of Xymogen's control, and not from the manufacturing or the delivery process." (Aff. Def. ¶¶ 2, 3). Xymogen also blamed changes in the stick packs on the "custodial interference of Nutrimatix or the custodial interference of Nutrimatix's customer." (Aff. Def. ¶ 10).

Nutrimatix is entitled to summary judgment on these affirmative defenses. The record evidence shows that the stick packs were stored properly, and there is no evidence whatsoever that the handling or storage of Xymogen's products caused any change in their taste or composition, or of any "custodial interference" on the part of Nutrimatix or any third party.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to issues for which the non-moving party would bear the burden of proof at trial, such the affirmative defenses here, the movant may point out an absence of evidence to support the non-moving party's case, or may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of*

*Real Prop. in Green & Tuscaloosa Cntys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991). "The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists" with respect to those issues. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On October 6, 2014, Nutrimatix contracted with Green Light Direct Services, Inc. d/b/a PMA Fulfillment ("PMA"), a major fulfillment services center in Arizona that regularly handles vitamin and supplement products. *See* Declaration of Sergio Radovcic ("Radovcic Decl.") ¶ 3, filed concurrently herewith.

2. Nutrimatix and PMA agreed that PMA would store and warehouse products for sale and delivery to Nutrimatix's customers, including certain "Custom Formula" stick packs that Nutrimatix had ordered from Xymogen. Radovcic Decl. ¶¶ 3-4.

3. Nutrimatix directed Xymogen to ship the Custom Formula stick packs to PMA's warehouse in Tolleson, Arizona. Xymogen did not specify any special storage conditions for the Custom Formula stick packs. Radovcic Decl. ¶ 5.

4. PMA received a total of six shipments of Custom Formula stick packs from Xymogen. The stick packs were received and stored in PMA's climate-controlled warehouse, and have been stored there ever since. Radovcic Decl. ¶¶ 6-7.

5. The stick packs have sat in an air-conditioned room since they were received by PMA. Nothing has been added or removed to the stick packs. The stick packs have not been tampered with in any way. The only stick packs that have been removed were those sold to Nutrimatix's customers and those tested by Nutrimatix before and during

this litigation. All of the individual stick packs remain unopened and sealed. Radovcic Decl. ¶¶ 7-8.

## ARGUMENT

In Paragraphs 2 and 3 of its Affirmative Defenses, Xymogen alleges that the stick packs were modified by "intervening causes" and "supervening causes" out of Xymogen's control. Specifically, Xymogen claims that:

> To the extent it is possible that the taste of Defendant's goods changed from the time Defendant shipped the goods to Plaintiff or from the time Plaintiff delivered the goods to Plaintiff's customers, any such change in taste resulted from either the handling processes or the storage of such goods once out of Xymogen's control, and not from the manufacturing or the delivery process.

Likewise, Paragraph 10 alleges "custodial interference," and alleges that "the actions of Nutrimatix, its ultimate customer, or others in the chain of custody outside of Xymogen's control" caused changes in the stick packs.

However, Xymogen's affirmative defenses are contradicted by the evidence, which indicates that Xymogen's stick packs were received and stored appropriately. It is undisputed that Nutrimatix contracted with a major third-party fulfillment center, PMA, to handle the storage and distribution of the stick packs to end-users. PMA received the stick packs directly from Xymogen, stored them in an air-conditioned room, and shipped those stick packs to customers. In contrast, there are no documents, witness or expert testimony, or any record evidence of any kind implying that the storage or handling of the stick packs impacted their composition in any way. There is also no evidence that the stick packs were tampered with by anyone.

Xymogen's unsupported defenses are analogous to those rejected by this Court in *Assimack v. J.C. Penney Corp.*, No. 8:04-CV-2436-T-30MAP, 2005 WL 2277535, at *1 (M.D. Fla. Sept. 19, 2005). In *Assimack,* the plaintiff sued a department store for injuries arising out of a defective steel pole, which fell and hit the plaintiff from behind. The store asserted a comparative negligence defense, alleging that either the plaintiff or some third party must have caused the pole to dislodge and fall. *Id.* This Court granted summary judgment in favor of the plaintiff on the defense, as "none of the deposition testimony or other record evidence reveal[ed] any fault on the part of the Plaintiff or any third-party." *Id.* at 2. Similarly, in this case, there is simply no material showing fault on the part of Nutrimatix, PMA, or anyone else involved with the storage or handling of the stick packs.

There is no record evidence directly supporting Xymogen's affirmative defenses, and none from which any inference can be derived to support the affirmative defenses. As such, as a matter of law, the affirmative defenses fail and Nutrimatix is entitled to a partial summary judgment in its favor on these defenses.

## **CONCLUSION**

Xymogen has consistently attempted to blame others for its own manufacturing failures. But the only evidence in the record shows that the stick packs were stored correctly, and there is absolutely no evidence of improper storage or "custodial interference." Nutrimatix is entitled to summary judgment on Paragraphs 2, 3, and 10 of Xymogen's Affirmative Defenses as a matter of law.

WHEREFORE, Nutrimatix respectfully requests the Court enter an order granting summary judgment in its favor on Xymogen's affirmative defenses as discussed herein.

**DATED**: June 24, 2016

                                      Respectfully submitted,

                                      /s/ *Andrew S. Kwan*
                                      Andrew S. Kwan
                                      Florida Bar No. 76539
                                      Raymond E. Kramer
                                      Florida Bar No. 988480
                                      *Counsel for Plaintiff*
                                      BEASLEY KRAMER
                                      & GALARDI, P.A.
                                      505 South Flagler Drive, Suite 1500
                                      West Palm Beach, Florida 33401
                                      Tel: (561) 835-0900
                                      Fax: (561) 835-0939
                                      Email: kwan@beasleylaw.net
                                                   kramer@beasleylaw.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2016, this document was electronically filed with the Clerk of this Court by using the CM/ECF system, which will serve a copy on all counsel of record.

                                      /s/ *Andrew S. Kwan*
                                      Andrew S. Kwan
                                      Florida Bar No. 76539
                                      *Counsel for Plaintiff*
                                      BEASLEY KRAMER
                                      & GALARDI, P.A.
                                      505 South Flagler Drive, Suite 1500
                                      West Palm Beach, Florida 33401
                                      Tel: (561) 835-0900
                                      Fax: (561) 835-0939
                                      Email: kwan@beasleylaw.net